IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Amanda W.,[1] Plaintiff, vs. Frank Bisignano, Commissioner of Social Security Administration, Defendant. | ) | C/A No.: 4:26-cv-369-BHH-TER REPORT AND RECOMMENDATION |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and Supplemental Security Income ("SSI"). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

I. Relevant Background

A. Procedural History

On August 20, 2021, Plaintiff protectively filed an application for DIB in which she alleged her disability began on September 21, 2020. Tr. at 236–42. Her application was denied initially and upon reconsideration. Tr. at 142–46, 155–48, 159–62, 163–66, 167–70. Plaintiff later filed an application for SSI. Tr. at 243–59. On April 8, 2025, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Anthony Capece. Tr. at 79–117 (Hr'g Tr.). The ALJ issued

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

an unfavorable decision on June 11, 2025, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 14–34. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on February 2, 2026. (ECF No. 1).

B. Background

Plaintiff was born in 1980 and was 40 years old on her alleged disability onset date. Tr. at 20, 26. She has past relevant work as a certified medication technician. Tr. at 98–99. Plaintiff initially alleged disability due to headaches, anxiety, diabetes, kidney disease, stroke, and blood pressure. Tr. at 128.

Plaintiff was hospitalized at Lexington Medical Center from September 21, through September 25, 2020, after experiencing an acute cerebrovascular accident. Tr. at 621–26, 683. A computed tomography ("CT") scan of her brain demonstrated "loss of gray-white differentiation within the right temporal and parietal lobes in a pattern compatible with right middle cerebral artery infarction." Tr. at 628. Magnetic resonance imaging ("MRI") of Plaintiff's brain showed a sizeable area of middle cerebral artery territory infarction with intrainfarctional hemorrhage, mild localized mass effect, and evidence of a small volume of regional subarachnoid hemorrhage. Tr. at 621. During her hospitalization, she demonstrated significant cognitive deficits, was able to follow one-, but not two-, step commands, had poor problem-solving ability, had difficulty remembering and identifying her room number, and could not count backwards with accuracy. Tr. at 637.

In the months following her hospitalization, Plaintiff reported inability to drive, blurred vision, brain fog, difficulty concentrating and responding quickly, memory impairment,

migraines, difficulty walking, confusion, anxiety, and sleep disturbance. Tr. at 535, 536, 547–48, 563, 577, 584, 606, 1223, 2674, 2694, 2714, 2768. She underwent surgery on November 19, 2020, to repair a hole in her heart. Tr. 1071–71, 3099. Her providers prescribed Amitriptyline and Topamax for headaches and Buspar and Lexapro for anxiety. Tr. at 547–48, 575, 2694.

Throughout 2021, Plaintiff reported chronic headaches and migraines, blurred vision, hand weakness, sensitivity to sound, elevated heart rate, unsteady gait, difficulty processing words, dizziness, balance problems, emotional fog, anxiety, depression, sleep disturbance, and being easily fatigued. Tr. at 468, 477, 487, 491, 497, 519, 522, 1139, 1145, 1222, 1231, 1234, 1238, 1370, 1374, 1401, 1409, 1413, 1422, 1431–32, 1441, 1460, 1476, 2485, 2530, 2585. Her providers prescribed Ubrelvy for migraines. Tr. at 522. She was hospitalized in March 2021 for acute kidney injury and symptomatic hypotension, and an MRI showed progression of encephalomalacia compared to the prior MRI of her brain. Tr. at 492, 1455, 3447. She was prescribed Xanax for anxiety. Tr. at 2486.

Plaintiff reported daily headaches, difficulty getting words out, and repeating herself on February 7, 2022. Tr. at 1245, 1352. She was prescribed Ubrelvy, but continued to report recurrent headaches and inability to focus and concentrate over the following week. Tr. at 1249, 2403, 2405. On August 15, 2022, Plaintiff reported experiencing migraines four to five days per month. Tr. at 1269. Nurse practitioner Patricia Head ("NP Head") noted on November 11, 2022, that Plaintiff had suffered from dizziness, memory loss, weakness, aphasia, and episodic migraines since her stroke. Tr. at 3391.

Plaintiff was hospitalized for diabetic ketoacidosis in late September 2023. Tr. at 2920, 2953, 2956, 2970, 2977. She endorsed blurred vision during a follow up visit on October 10, 2023. Tr. at 2894, 2909.

On April 15, 2024, Plaintiff endorsed fatigue, sleep disturbance, unsteady gait, and bilateral lower extremity weakness and stated her headaches had returned, as she lacked insurance and could not afford preventive medication. Tr. at 2282–83, 2888. NP Head noted Plaintiff suffered from dysphagia, slurred speech, unsteady gait, and memory loss, had recurrent headaches, and was unable to focus. Tr. at 2882, 2888, 2889. On April 19, 2024, NP Head completed a physical assessment form. Tr. at 3388–89. She indicated Plaintiff's diagnosis as ischemic stroke. Tr. at 3388. She stated Plaintiff's symptoms were often severe enough to interfere with the attention and concentration required to perform simple work-related tasks. *Id.* She noted Plaintiff experienced dizziness, unstable gait, and drowsiness as side effects from medications. *Id.* She said Plaintiff could walk zero to one city block, sit for zero hours, and stand for zero hours in an eight-hour workday. *Id.* She said Plaintiff would have to take a 30-minute break for every 15–30 minutes and would be unable to return to work after taking a break. *Id.* She noted Plaintiff could occasionally lift and carry 10 pounds or less and could never carry 20 or more pounds. *Id.* She stated Plaintiff had limited ability to repetitively reach, handle, and finger and could use her bilateral hands, fingers, and arms each for 10% of an eight-hour workday. *Id.* She anticipated Plaintiff's impairments or treatments would cause her to be absent from work more than four times per month. Tr. at 3389. She indicated Plaintiff's physical impairments and emotional impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id.*

On January 29, 2025, Plaintiff reported "extreme" headaches, memory loss, difficulty focusing, migraines, and unsteady gait, and she was observed to have lower extremity weakness and edematous feet. Tr. at 3422, 3428, 3429.

C. The ALJ's Decision

In the decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
2. The claimant has not engaged in substantial gainful activity since September 21, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: obesity, cerebrovascular accident (CVA), peripheral neuropathy, generalized anxiety disorder, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. The clamant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally push/pull, or operate food controls with the bilateral lower extremities. The claimant can only occasionally be exposed to noise louder than moderate as defined by the DOT and SCO. The claimant cannot be exposed to hazards such as unprotected heights. The claimant can understand, remember, and carry out simple instructions, and use her judgment to make simple work-related decisions. The claimant can deal with only occasional changes to the routine work setting.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on September 6, 1980 and was 40 years old, which is defined as a younger individual age 18–44 on the alleged on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 19–28.

## II. Discussion

Plaintiff argues the ALJ failed to account for his assessment of moderate limitations in concentrating, persisting, or mainlining pace in the RFC assessment. She also claims the ALJ failed to properly evaluate the medical opinion provided by NP Head. Defendant argues the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

### A. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there

performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of

---

are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B. Analysis

Plaintiff argues the ALJ's decision "runs afoul" of the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), because it does not account for the moderate limitations he assessed to her abilities to concentrate, persist, or maintain pace. (ECF No. 13 at 10). She claims the ALJ's decision fails to include a logical bridge between the evidence and his conclusion. *Id.* She asserts that the evidence does not support the ALJ's conclusion that "the exams revealed no significant deficits in this domain despite consistent reports of brain fog and confusion at times," and points to imaging studies of her brain, her reports to her medical providers, and NP Head's opinion that her symptoms were severe enough to interfere with her attention, concentration, and ability to perform simple work-related tasks as refuting the ALJ's conclusion. *Id.* at 12–15.

Citing *Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020), the Commissioner argues that "courts have declined to impose 'per se rule[s]' when assessing the suitability of mental limitations in the RFC finding." (ECF No. 14 at 4, 8). He maintains the ALJ's RFC finding and supporting analysis satisfied the substantial evidentiary standard, as he explained his reason for assessing a moderate limitation in concentrating, persisting, or maintaining pace and discussed specific exam findings, medical opinions, and Plaintiff's testimony. *Id.* at 6–7. He maintains the ALJ considered Plaintiff's headaches, her ability to serve as caretaker for her mother-in-law, and her ability to perform most activities independently to support the RFC assessment. *Id.* at 8–9.

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). To do so, he must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96–8p, 1996 WL 374184, at *2. “The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).” *Id.* at *7. “The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.” *Id.* Additionally, “‘a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,’ including ‘a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.’” *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Both the ALJ and this court must consider the whole record when analyzing Plaintiff's claims. *See Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).

Under *Mascio*, once an ALJ has made an earlier finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, he must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary. *Mascio* 780 F.3d at 638. The Fourth Circuit held that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the RFC or the hypothetical question to the vocational expert to simple, routine tasks or unskilled work. *Id.* “[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter would account for a claimant's limitation in concentration, persistence, or pace.” *Id.* The functional area of “concentration, persistence and pace” refers to the “ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate” completion of work. 20

C.F.R. pt. 404, Subpart P, App. 1 § 12.00(c)(3). Consequently, this court must consider whether the ALJ explained in the RFC narrative the reasons for the specific limitations set forth in the RFC assessment and whether there is any explanation regarding how such determination accounts for the previously found limitations in concentration, persistence, and pace. *Mascio*, 780 F.3d at 638.

In explaining his assessment of moderate limitations in concentrating, persisting, or maintaining pace, the ALJ wrote:

> The claimant reported brain fog and difficulty concentrating, noting the inability to complete tasks or concentrate for very long; as well as difficulty following spoken instructions (10E/13). However, exams revealed no significant deficits in this domain despite consistent reports of brain fog and confusion at times (2F/15, 71, 145, 282; 5F/1; 9F/21, 140; 10F/21, 62, 147).

Tr. at 21. He included in the RFC assessment mental restrictions for understanding, remembering, and carrying out simple instructions, using judgment to make simple work-related decisions, and dealing with only occasional changes to the routine work setting. In explaining his consideration of Plaintiff's mental impairments, the ALJ noted:

> From a psychological standpoint, the longitudinal records document a history of generalized anxiety disorder with increased worry and problems with concentration; as well as reports of fluctuating moods due to major depressive disorder (10E; 14F; hearing testimony). The claimant specifically reported problems with memory, difficulty counting money and difficulty with puzzles; and treatment notes also document reports of sleep disturbance (10F/143). However, mental status exams were consistently benign showing that she remained alert and oriented in all spheres with intact judgment and insight, normal mood and behavior (2F/15, 71, 145, 282; 5F/11; 9F/21, 140; 10F/21, 62, 147). Further, the claimant did not require significant changes in her treatment regimen and due to ongoing symptoms of anxiety she continued taking prescriptions including Xanax, Ativan and BuSpar to help control her symptoms (10F/34). Despite her residual stroke symptoms, she served as primary caretaker for her mother-in-law during the relevant period; and although she reported limited activities of daily living such as driving, she was able to perform most activities independently (10E; 10F/77; hearing testimony). Overall, these treatment notes support mental limitations as adopted in the above residual functional capacity.

Tr. at 24.

Despite having assessed moderate limitations in Plaintiff's abilities to concentrate, persist, and maintain pace, the ALJ included no restrictions in the RFC assessment directly related to Plaintiff's ability to stay on task. This would not have been error if the ALJ had provided an adequate explanation for failing to do so, but the above explanation is not adequate, as he failed to indicate why the evidence he cited led him to conclude that Plaintiff's ability to stay on task was not restricted. As the ALJ recognized, Plaintiff maintained that she had problems with concentration and memory, difficulty counting money, difficulty with puzzles, trouble following spoken instructions, brain fog, and difficulty completing tasks and sustaining concentration. Tr. at 21, 24. The ALJ referenced no finding that contradicted these allegations. Findings that Plaintiff was alert, oriented in all spheres, had intact judgment and insight, demonstrated normal mood and behavior, served as a primary caretaker for her mother-in-law, and was able to perform most activities independently, with the exception of driving, Tr. at 24, do not refute the reported limitations above or demonstrate that Plaintiff had the ability to stay on task as required to complete a normal workday and workweek.

The case requires remand for the ALJ to explain how the RFC accounts for moderate limitations in concentration, persistence, and pace. The decision should make clear that the ALJ considered Plaintiff's limitations in concentration, persistence, and pace and provide substantial evidence underlying the ALJ findings. In light of the court's finding that this matter should be remanded for further consideration, the court need not address Plaintiff's remaining issues related to NP Head's opinion. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon

remand, the ALJ should address all of Plaintiff's remaining issues and evaluate those in accordance with the applicable law, regulations, and policies.

III. Conclusion and Recommendation

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed and that this matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

IT IS SO RECOMMENDED.

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 21, 2026
Columbia, South Carolina

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).